# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GUADALUPE GRANADO,** individually and on behalf of all similarly situated persons, | ) ) ) ) **Case No.** CIV-22-516-SLP |
| Plaintiff, | ) **(Oklahoma County Court Case No.** ) **CJ-2022-2500)** |
| v. | ) ) |
| **SANDRIDGE ENERGY, INC.,** | ) ) |
| Defendant. | ) **[28 U.S.C. §§ 1332 and 1441(b);** ) **DIVERSITY JURISDICTION]** |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant SandRidge Energy, Inc., (hereinafter referred to as "SandRidge" or "Defendant"), a Delaware Corporation, hereby removes this action from the District Court within and for Oklahoma County in the State of Oklahoma to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. §§ 1332 and 1441(b) and alleges as follows:

## I.
## DESCRIPTION OF ACTION

On or about May 27, 2022, Plaintiff Guadalupe Granado, individually and on behalf of all similarly situated persons (hereinafter referred to as "Plaintiff"), initiated this putative class action against SandRidge in the District Court within and for Oklahoma County. SandRidge was purportedly served on May 31, 2022. The Class Action Petition for this instant action, captioned *GUADALUPE GRANADO, individually and on behalf of all*

*similarly situated persons v. SandRidge Energy, Inc.*, bearing case number CJ-2022-2500, is attached hereto as Exhibit 1.

Plaintiff alleges that he, and similarly situated individuals, experienced damages as a result of a third-party cyber-attack on SandRidge's computer network. *See* Exhibit 1, ¶¶ 23-27. Plaintiff has raised several causes of action, including Negligence, Breach of Implied Contract, Breach of Covenant of Good Faith and Fair Dealing. *See* Exhibit 1. Further, Plaintiff seeks extensive declaratory relief. *See Id.* SandRidge denies the allegations underlying Plaintiff's claims.

## II.
## TIMELINESS AND TECHNICAL REQUIREMENTS OF REMOVAL

SandRidge was purportedly served with Plaintiff's Class Action Petition on May 31, 2022. A notice of removal must be filed within thirty days of service of the initial pleading. *See* 28 U.S.C. § 1446(b)(1). Notice of removal in this matter must therefore be filed by June 30, 2022. Accordingly, SandRidge's Notice of Removal is timely.

## III.
## REMOVAL BASED ON DIVERSITY JURISDICTION

### A.   Minimum Diversity Exists in this Matter

Generally, "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). However, a class action requires minimum, rather than complete diversity. Pursuant to the Class Action Fairness Act ("CAFA"), a district court enjoys subject matter jurisdiction in a class action in which the class: (1) includes at least 100 members;

(2) features an amount in controversy in excess of five million dollars; and (3) demonstrates minimal diversity- diversity of citizenship between at least one defendant and one plaintiff-class member, exists. *See Dutcher v, Matheson*, 840 F.3d 1183, 1189 (10th Cir. 2016) citing *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009). The Tenth Circuit has recognized a "strong preference that interstate class actions should be heard in federal court if properly removed by any defendant." *Dutcher v, Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016)

An individual's citizenship is determined by their domicile; "[i]t imports permanent residence in a particular state with the intention of remaining, and is not dependent on birth." *Walden v. Broce Const. Co.*, 357 F.2d 242 (10th Cir. 1966) quoting 35 C.J.S. Federal Courts § 56. A corporation is a citizen of both the state in which it is incorporated and the state in which its principal place of business is located. See 28 U.S.C. § 1332(c).

Plaintiff is domiciled in Pecos County, Texas. See Exhibit 1, ¶ 18. Accordingly, Plaintiff is a citizen of Texas. SandRidge is a Delaware corporation with its principal place of business located at 1 E Sheridan Avenue, Suite 500, in Oklahoma City, Oklahoma. SandRidge is therefore a citizen of Delaware and Oklahoma, respectively. Because Plaintiff is a citizen of Texas and SandRidge is a citizen of Delaware and Oklahoma, minimum diversity exists. Pursuant to CAFA, diversity jurisdiction is satisfied.

  **B.** <u>**The Class Likely Exceeds 100 Individuals**</u>

Removal of a class action requires a showing that the class exceeds 100 members. *See* 28 U.S.C.A. 1332(d)(5)(B). Plaintiff's Complaint identifies the class as "All persons residing in the United States who are current or former employees, or job applicants, of

SandRidge and had their PII [(personally identifiable information)] compromised by an unknown third-party cybercriminal as a result of the Data Breach that occurred on or around October 25, 2021." Exhibit 1, ¶ 139. Plaintiff also identifies a "Texas Subclass," defined as "All persons residing in the State of Texas who are current or former employees, or job applicants, of SandRidge and had their PII compromised as a result of the Data Breach that occurred on or around October 25, 2021." *Id.*  Plaintiff further alleges that "[m]embers of the proposed Class likely number in the tens of thousands. . . ." Exhibit 1, ¶ 140. More specifically, Plaintiff alleges the existence of "over twelve thousand (12,000) similarly situated Class members." Exhibit 1, ¶ 2.  Thus, the proposed class likely exceeds 100 members.

      **C.**    **The Amount in Controversy Likely Exceeds $5,000,000**

Pursuant to CAFA, a class action is removable if the aggregate sum of the class claims meets or exceeds the sum of $5,000,000, exclusive of interest and costs. See 28 U.S.C.A. § 1332(d)(2).

A notice of removal must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). In order to determine the amount in controversy, courts look to the "face of the pleadings." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). "Courts should apply the same liberal rules [to removal allegations] that are applied to other matters of pleading. Owens, 574 U.S. at 81 (quoting H.R. Rep. No. 100-889, p. 71 (1988)) (internal quotations omitted). "No anti-removal

presumption attends cases invoking CAFA which Congress enacted to facilitate adjudication of certain class actions in federal court." Id. at 82.

A defendant seeking removal of a class action "must show that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1246 (10th Cir. 2012). "As historically used, the term 'in controversy' has never required a party seeking to invoke federal jurisdiction to show that damages 'are greater' or will likely prove greater 'than the requisite amount' specified by statute. Instead, the term has required a party seeking federal jurisdiction to show only and much more modestly that 'a fact finder might legally conclude' that damages exceed the statutory amount." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909 (10th Cir. 2016) (quoting *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012)).

In determining the value of declaratory or injunctive relief, the Tenth Circuit has held that the amount in controversy is determined by the value of the subject of the litigation. *See Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122 (10th Cir. 2021) (citing *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006)). In doing so, courts apply the "either viewpoint" rule; considering "either the value of a judgment from the viewpoint of the plaintiff or the cost from the viewpoint of the defendant of injunctive and declaratory relief." *Phelps Oil & Gas,* 5 F.4th at 1126 (citing *City of Moore v. Atchison, Topeka & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983)) (emphasis added).

5

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Id. at 87. If, however, the amount in controversy is contested via motion to remand, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 88; *See* 28 U.S.C. § 1446(c)(2)(B). Only then must the removing party submit "affidavits or declarations, or other summary-judgment-type evidence" to establish the propriety of removal by something more than "mere speculation and conjecture." Owens, 574 U.S. at 87.

In the instant matter, Plaintiff seeks damages "in an amount to be proven at trial" including punitive damages, general damages for anxiety, emotional distress and loss of privacy, actual damages for various expenses and costs purportedly incurred and "continuing" into the future "for the rest of [the] lives" of Plaintiff and all class members as a result of Defendant's alleged conduct, "other economic losses," and attorneys' fees for himself and all class members. Exhibit 1 at ¶¶ 168, 170, 200, and 202.Further, Plaintiff seeks extensive declaratory relief. See Exhibit 1, Count Four, ad damnum clause.

Among the relief sought is an order "requiring Defendant to provide lifetime credit monitoring and identity theft repair services to Class members." Exhibit 1, ad damnum clause (d)(xxii). Credit monitoring services are of varying costs; premium credit monitoring services generally cost between $8.99 to $39.95 per month. See Alexandria White, "How Much does Credit Monitoring Cost?", available at https://www.cnbc.com/select/how-much-does-credit-monitoring-cost/ and attached hereto

as Exhibit 2. This represents an potential annual cost between $107.88 - $479.40 per year per Class member. The putative class is believed to consist of approximately 12,000 members. The average life expectancy in the United States is 77.0 years.[1] As the various ages of the Class members are unknown, it is fair to assume lifetime credit monitoring for a range of 20 – 50 years per Class member. Accordingly, lifetime credit monitoring for all Class members could carry a cost in excess of $25,891,200.

Additionally, Plaintiff's Complaint asks the Court to order SandRidge to implement a multitude of data management and security tactics. These demands were reviewed by Dr. Bruce Hartley, an expert in the field of cybersecurity. A true and correct copy of the affidavit of Dr. Hartley is attached hereto as Exhibit 3. Dr. Hartley notes that Plaintiff's requested penetration testing and simulated attacks could cost between $600,000 - $700,000. See Exhibit 3, ¶ 1. Dr. Hartley next evaluated Plaintiff's demand that SandRidge hire additional security personnel. Dr. Hartley found that hiring the professionals indicated by Plaintiff's Complaint for the ten-year period of time sought could cost between $4,123,470 to $5,284,890. See Id. at ¶ 2. The Complaint further demands that SandRidge "significantly increase it's spending on cybersecurity, including personnel." Exhibit 1. Dr. Hartley estimates that a "significant increase" would represent 2-3% of SandRidge's revenue per year- between $2,880,000 to $4,320,000 per year.[2] See Exhibit 3 at ¶ 3.

---

[1] Centers for Disease Control, https://www.cdc.gov/nchs/fastats/life-expectancy.htm

[2] For purposed of this Notice of Removal, revenue refers to that alleged by Plaintiff. *See* Exhibit 1, ¶ 17. SandRidge does not adopt or admit to this paragraph or any other averment in Plaintiff's Complaint.

8011111/68448716v.1

Plaintiff's demand that SandRidge delate, destroy, and purge data would likely cost in excess of $100,000. See Id. at ¶ 4. Finally, Dr. Hartley found that Plaintiff's demand that SandRidge be prohibited from storing PII on any cloud-based data base, if possible, could cost between $1,000,000 to $2,000,000 per year.

Moreover, Plaintiff is seeking punitive damages based on allegations that Defendant's conduct was willful and reckless. See Exhibit 1 at ¶¶ 161 and 170. While SandRidge denies that Plaintiff is entitled to any damages, let alone punitive damages, these prospective punitive damages must be considered in any calculation of the amount in controversy. If punitive damages are available as a matter of law, a court must aggregate punitive and actual damages to determine whether an action meets the requisite amount in controversy. *Bell v. Preferred Life Assurance Soc.*, 320 U.S. 238, 240 (1943) (reversing dismissal for lack of jurisdiction that failed to consider punitive damages) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."). The amount in controversy therefore clearly exceeds the jurisdictional requirement of CAFA.

## IV.
## OKLAHOMA COUNTY LIES WITHIN WESTERN DISTRICT OF OKLAHOMA

Plaintiff filed his Petition in the District Court within and for Oklahoma County which is within this judicial district and division. Oklahoma County is within the Western District of Oklahoma; therefore, this Court is the proper venue for removal pursuant to 28 U.S.C. § 1441(a).

## V.
## **NOTICE OF ADVERSE PARTIES AND THE SUPERIOR COURT**

Promptly after filing this Notice, SandRidge will provide written notice of removal to Plaintiff and the Superior Court and will file a copy of this Notice of Removal with the Clerk of the District Court within and for Oklahoma County.

State Docket Sheet for *GUADALUPE GRANADO, individually and on behalf of all similarly situated persons v. SandRidge Energy, Inc.*, bearing case number CJ-2022-2500 is attached hereto as Exhibit 4.

Dated: June 21, 2022.   Respectfully submitted,

**GORDON & REES LLP**

*/s/ Robert A. Bragalone*
**ROBERT A. BRAGALONE, OBA #31898**
BBragalone@grsm.com
Phone:  (214) 231-4660 Main
            (214) 231-4714 Direct
Fax:    (214) 461-4053
**ROBERT B. HOUSTON, OBA # 14751**
BHouston@grsm.com
Phone:  (405) 808-5420 Direct

101 Park Avenue, Suite 1300
Oklahoma City, OK  73102

**ATTORNEYS FOR DEFENDANT SANDRIDGE ENERGY, INC.**