## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GUADALUPE GRANADO, MANUEL VEGA**, and **DONALD JOHNSTON**, individually and on behalf of all similarly situated persons, | Case No. 5:22-CV-00516 |
| Plaintiffs, | Hon. Judge Palk |
| v. | |
| **SANDRIDGE ENERGY, INC.**, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND...................................................................................1

    A.  OVERVIEW OF THE LITIGATION. ..................................................................1

    B.  NEGOTIATION OF THE PROPOSED SETTLEMENT. ...........................................2

III. TERMS OF THE PROPOSED SETTLEMENT. ......................................................4

    A.  SETTLEMENT CLASS DEFINITION. ................................................................4

    B.  SETTLEMENT BENEFITS. ..............................................................................4

        1.  Non-Reversionary Settlement Fund. ..................................................4

        2.  Monetary Benefits to Settlement Class Members. ............................5

        3.  Non-Monetary Benefits to Settlement Class Members. .....................6

    C.  SERVICE AWARDS, ATTORNEYS' FEES, AND LITIGATION EXPENSES. ...........6

    D.  THE PROPOSED NOTICE AND CLAIMS PROGRAM. .........................................6

        1.  Direct Notice to the Settlement Class. ...............................................7

        2.  The Settlement Website. .....................................................................7

        3.  Opt-Outs and Objections.....................................................................8

IV.  ARGUMENT AND AUTHORITIES.......................................................................8

    A.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND AUTHORIZE
        NOTICE TO THE PROPOSED SETTLEMENT CLASS...................................................8

        1.  Rule 23(e)(2)(A): The Proposed Class is Adequately Represented. ........................10

        2.  Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length........11

3.   Rule 23(e)(2)(C) and the Jones Factors: The Settlement Relief is Fair, Reasonable, and Adequate.................................................................................................................12

   i.   Jones Factor 1:The Settlement was Fairly and Honestly Negotiated...................12

   ii.   Rule 23(e)(2)(C)(i) and Jones Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt. ..................................13

   iii.   Jones Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation. .............14

   iv.   Jones Factor 4: The Parties and their Counsel Aver that the Settlement is Fair and Reasonable.........................................................................................................14

   v.   Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective.....................................................................................16

   vi.   Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable.................16

V.   THE COURT SHOULD FIND IT IS LIKELY TO CERTIFY THE SETTLEMENT CLASS.................................................................................................................................17

  A.   RULE 23(A) REQUIREMENTS ARE SATISFIED ..............................................................17

  B.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED. ..............................................19

VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN AND SETTLEMENT ADMINISTRATOR......................................................................................21

VII.   CONCLUSION ...........................................................................................................23

# TABLE OF AUTHORITIES

<u>CASES</u>

*Brown v. Electrolux Home Products, Inc.*,

  817 F.3d 1225 (11th Cir. 2016) ........................................................................20

*CGC Holding Co., LLC v. Broad and Cassel*,

  773 F.3d 1076 (10th Cir. 2014) ........................................................................20

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

  888 F.3d 455 (10th Cir. 2017) ..........................................................................15

*Davidson v. Healthgrades Operating Company, Inc.*,

  No. 1:21-CV-01250-RBJ (D. Colo.)..................................................................16

*DeJulius v. New England Health Care Employees Pension Fund*,

  429 F.3d 935 (10th Cir. 2005)...........................................................................21

*DG ex rel. Stricklin v. Devaughn*,

  594 F.3d 1188 (10th Cir. 2010)..........................................................................19

*Dickey's Barbeque Restaurants, Inc.*,

  No. 20-cv-3424, Dkt. 62 (N.D. Tex.)................................................................14

*Gordon v. Chipotle Mexican Grill, Inc.*,

  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ..................13

*Grunin v. Int'l House of Pancakes*,

  513 F.2d 114 (8th Cir. 1975) ............................................................................22

*Hammond v. The Bank of N.Y. Mellon Corp.*,

  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..................................................13

*Harris v. Chevron U.S.A., Inc.*,

No. 15-cv-0094, 2019 WL 5846917 (W.D. Okla. July 29, 2019).......................8, 9, 10, 17

*In re Anthem, Inc. Data Breach Litig.*,

327 F.R.D. 299 (N.D. Cal. 2018) ..........................................................................17, 20, 21

*In re Crocs, Inc. Sec. Litig.*,

306 F.R.D. 672 (D. Colo. 2014) .......................................................................................11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,

No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ...................17, 20

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

293 F.R.D. 21 (D. Me. 2013) ...........................................................................................13

*In re Herff Jones Data Breach Litigation*,

No. 21-cv-1329 (S.D. Ind.) ..............................................................................................14

*In re Molycorp, Inc. Sec. Litig.*,

No. 12-cv-292, 2017 WL 4333997 (D. Colo. Feb. 15, 2017)...........................................11

*In re Motor Fuel Temperature Sales Practices Litig.*,

286 F.R.D. 488 (D. Kan. 2012) ........................................................................................10

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,

997 F.3d 1077 (10th Cir. 2021) ........................................................................................16

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)................................17

*In re Thornburg Mortg., Inc. Secs. Litig.*,

912 F. Supp. 2d 1178 (D. N.M. 2012) .............................................................................18

*Jones v. Nuclear Pharmacy, Inc.*,

741 F.2d 322 (10th Cir. 1984)............................................................................ 10

*Lucas v. Kmart Corp.*,

234 F.R.D. 688 (D. Colo. 2006) .................................................................... 12

*Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*,

No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010)................... 15

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,

923 F.3d 779 (10th Cir. 2019) .................................................................. 18, 20

*Phillips Petroleum Co. v. Shutts*,

472 U.S. 797 (1985) ............................................................................ 21

*Trevizo v. Adams*,

455 F.3d 1155 (10th Cir. 2006) ................................................................. 18

*Tyson Foods, Inc. v. Bouaphakeo*,

136 S.Ct. 1036 (2016).......................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338 (2011)............................................................................ 18

*Winstead v. ComplyRight, Inc.*,

No. 1:18-cv-04990 (N.D. Ill.) ................................................................. 14

RULES

Fed. R. Civ. P. 23.........................................................................passim

Treatises

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ........................................................... 12

4 W. Rubenstein, *Newberg on Class Actions* §13:10 (5th ed. 2015)................................... 8, 9

Newberg on Class Actions § 4:49 ......................................................................................... 20

## I.    **INTRODUCTION**

Guadalupe Granado, Manuel Vega, and Donald Johnston (collectively, "Plaintiffs" or "Representative Plaintiffs"), individually and on behalf of the putative class, respectfully move under Federal Rule of Civil Procedure 23(e) ("Rule"), for preliminary approval of a class action settlement between themselves and Defendant Sandridge Energy, Inc. ("Sandridge" or "Defendant") (together with Plaintiffs, the "Parties"). The proposed Class Action Settlement Agreement (the "Agreement" or "Settlement Agreement"),[1] if approved, will resolve the claims asserted by Plaintiffs and will provide substantial monetary and injunctive relief to Settlement Class Members whose personally identifiable information ("PII") may have been compromised in a data security incident occurring on or around October 25, 2021 ("Data Security Incident").

## II.    **FACTUAL BACKGROUND**

### A.  **Overview of the Litigation.**

Defendant is an oil and gas company involved in the acquisition of oil and gas properties. First Am. Compl. ("Compl.") ¶ 17, ECF No. 13. Plaintiffs are former employees of Defendant, who supplied their PII to Defendant in exchange for employment. (*Id.* ¶¶ 11, 19–21).

On October 25, 2021, Sandridge experienced a "network disruption" in which

---

[1] The Class Action Settlement Agreement is attached as Exhibit 1 to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Federman Decl."), filed contemporaneously herewith. Unless otherwise noted capitalized terms have the same meaning assigned to them in the Settlement Agreement ("SA").

"limited information maintained on [Defendant's] network was accessed by an unauthorized actor." (*Id.* at Exhibit 1). The types of information contained within the affected data included first and last names in combination with Social Security numbers. (*Id.* ¶ 1). Approximately 12,333 people were affected in the Data Security Incident. (*See id.* ¶ 2). Defendant sent notice letters via mail to Plaintiffs and the Settlement Class on or about March 31, 2022, informing them their PII may be at risk as a result of the Data Security Incident. (*Id.* ¶¶ 29–30).

On May 27, 2022, Plaintiffs filed their Class Action Petition in the District Court of Oklahoma County, State of Oklahoma, addressing Defendant's alleged failure to properly secure and safeguard Plaintiff's and Class Members' PII. Defendant timely removed the action to this Court, on the basis of diversity jurisdiction (ECF No. 1). Shortly thereafter, Defendant filed a motion to dismiss Plaintiff's cause of action on standing and other grounds (ECF No. 6). In response, Plaintiffs filed their First Amended Class Action Complaint (ECF No. 13). Defendant filed another Motion to Dismiss (ECF No. 23), which was later withdrawn by Defendant to pursue approval of this Settlement (ECF No. 28).

**B.  Negotiation of the Proposed Settlement.**

This Settlement resulted from good faith, arm's-length settlement negotiations, as well as a full-day mediation session on September 20, 2023, with highly respected mediator, Bennet G. Picker. (Federman Decl., ¶ 4).  Although the Parties did not resolve the case during the mediation session, significant progress was made. (*Id.*).  After the conclusion of the mediation session, the Mediator provided a confidential mediator's proposal to the Parties, which was considered by Plaintiffs and Defendant before eventually

accepting the proposal. (*Id.*).  The Mediator's proposal resulted in an agreement to settle this matter in principle on a class-wide basis. (*Id.*).

In the weeks that followed the mediation, the Parties continued to negotiate the remaining terms of the Settlement and drafted a comprehensive Settlement Agreement with accompanying exhibits. (*Id.*). The Parties also solicited cost proposals from potential settlement administrators to provide adequate cost-effective notice to Plaintiffs and the Class. (*Id.* ¶ 7).

Importantly, settlement negotiations did not occur before Plaintiffs were well informed of the strengths and weaknesses of their case. (*Id.* ¶ 6). Before settlement negotiations, Plaintiffs sought and obtained informal discovery from Sandridge on a number of topics, including: the number of individuals whose PII was compromised during the Breach; the types of PII exposed; the mechanics of the Breach; the remedial actions Sandridge took after the Data Security Incident; and the terms of potentially applicable insurance coverage. (*Id.* ¶ 5).

The information received allowed Plaintiffs' Counsel,[2] who are experienced in data breach class actions, to conduct settlement negotiations with a thorough understanding of the strengths and weaknesses of Plaintiffs' claims, the size and scope of the potential class, the ability to give notice to the proposed class, and the financial resources available to facilitate a settlement. (*Id.* ¶ 6). Equipped with this knowledge, and their significant experience litigating and resolving similar actions, Plaintiffs' Counsel negotiated what they

---

[2] "Plaintiffs' Counsel" collectively refers to William B. Federman of Federman & Sherwood and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC.

believe to be a fair, adequate, and reasonable settlement worthy of presentation to the Court and preliminary approval. (*Id.* ¶ 8).

### III.    TERMS OF THE PROPOSED SETTLEMENT.

#### A.  Settlement Class Definition.

For settlement purposes only, Plaintiffs propose certification of the following class:

all persons Sandridge identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.[3]

(SA, ¶ 1.31).

#### B.  Settlement Benefits.

The Settlement Agreement provides meaningful relief in the form of significant monetary compensation and non-monetary benefits to Settlement Class Members who choose to take advantage of the Settlement.

##### 1.  Non-Reversionary Settlement Fund.

Under the Settlement Agreement, Sandridge will create a generous non-reversionary cash Settlement Fund of $600,000.00.  (*Id.* ¶ 1.35). The Settlement Fund will be used to pay: (i) Settlement Costs;[4] (ii) Documented Ordinary Losses and Extraordinary Losses; (iii) Attested Time; (iv) Credit Monitoring; and (v) payments for approved claims for the Pro

---

[3] "Excluded from the Settlement Class are any judge presiding over this matter and any members of their first-degree relatives, judicial staff, Sandridge's officers, directors, and members, and persons who timely and validly request exclusion from the Settlement Class." (SA, ¶ 1.31).

[4] "Settlement Costs" means all costs of the settlement including the costs of carrying out the Notice Program, as set forth in Paragraph 4 herein, Claims Administration, any Attorneys' Fees and Expenses Award, any Service Award to Representative Plaintiffs, and all other expenses or costs related to the settlement, and payments of valid claims to the Settlement Class Members." (SA, ¶ 1.31).

Rata Alternative Cash Payments. (*See id.* ¶¶ 1.35, 2.7). Settlement Payments may be subject to a pro rata increase or decrease, depending on the aggregate amount of valid claims received. (*See id.* ¶¶ 2.9–2.10).

### 2.   Monetary Benefits to Settlement Class Members.

All Settlement Class Members may submit a claim for up to One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) for reimbursement of Documented Ordinary Losses. (*Id.* ¶ 2.3.2(a)).  To receive reimbursement for Documented Ordinary Losses, Settlement Class Members need only submit a valid Claim Form that includes third-party documentation supporting the loss (such as receipts). (*Id.*).

Settlement Class Members may also submit a claim for Attested Time Spent for up to ten (10) hours at thirty dollars ($30.00) per hour (a maximum of $300.00). (*Id.* ¶ 2.3.2(b)). Settlement Class Members may receive reimbursement of Attested Time Spent with an attestation that they spent the claimed time responding to issues raised by the Data Incident. (*Id.*).  A claim for Attested Time Spent may be combined with a claim for reimbursement for Documented Ordinary Losses, but a Settlement Class Member shall not be eligible to receive more than One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) for Documented Ordinary Losses and Attested Time Spent. (*Id.*).

Additionally, Settlement Class Members are also eligible to receive compensation for Documented Extraordinary Losses resulting from the Data Security Incident of up to $10,000.00, upon submission of a valid Claim Form. (*Id.* ¶ 2.3.2(c)).

Lastly, in lieu of receiving a reimbursement for Documented Ordinary Losses, Attested Time Spent, or Documented Extraordinary Losses, all Settlement Class Members

may elect to submit a claim for an Alternative Cash Payment which will be a pro rata payment from the net Settlement Fund after payment of costs of the settlement, including the costs of carrying out the Notice Program, any Attorney's Fees and Expenses, any Service Awards, and payments for claimed Credit Monitoring, Documented Ordinary Losses, Attested Time Spent, and Documented Extraordinary Losses. (*Id.* ¶ 2.3.2(d)).

### 3.   Non-Monetary Benefits to Settlement Class Members.

In addition to the monetary benefits described above, Settlement Class Members are also eligible to enroll in three (3) years of Credit Monitoring and Identity Theft Protection Services, regardless of whether the Settlement Class Member submits a claim for monetary compensation. (*Id.* ¶ 2.3.1).

### C.  Service Awards, Attorneys' Fees, and Litigation Expenses.

In recognition of Representative Plaintiffs' service to the Class, Plaintiffs' Counsel will apply to the Court for issuance of Service Awards to the Representative Plaintiffs. Subject to the Court's approval, the Settlement Fund will be used to pay Service Awards of Two Thousand Five Hundred Dollars $2,500 to each of the three (3) Plaintiffs ($7,500.00 total).  (*Id.* ¶ 9.2).

Plaintiffs' Counsel will also apply to the Court for an award of reasonable attorneys' fees.  Subject to the Court's approval, Plaintiffs' Counsel will seek up to 33.33% of the Settlement Fund to compensate Plaintiffs' Counsel for their dedication and success in achieving the benefits described above for the Settlement Class.  (*Id.* ¶ 9.1).

### D.  The Proposed Notice and Claims Program.

After a competitive bidding process, the Parties mutually agreed to retain Simpluris

to perform settlement administration and notice services, subject to Court approval, the costs of which shall be paid from the Settlement Fund.

### 1.  Direct Notice to the Settlement Class.

The Parties propose individually notifying each Settlement Class Member through direct notice via U.S. Mail of the Settlement. (*Id.* ¶ 4.3). Sandridge will submit to the Settlement Administrator the name and mailing address of each known class member within ten (10) days of the entry of the Preliminary Approval Order. (*Id.* ¶ 4.2). The Settlement Administrator will use this data to send notice directly to Settlement Class Members through U.S. Mail. (*Id.* ¶ 4.3). If this initial notice is returned as undeliverable with a forwarding address, the Claims Administrator will re-mail the notice to the forwarding address listed. (*Id.* ¶ 4.3(a)(ii)). In the event the Claims Rate (as calculated by the Claims Administrator) is less than 3.0% of the Settlement Class, forty-five (45) days prior to the Claims Deadline, the Claims Administrator will issue a Reminder Notice thirty (30) days prior to the Claims Deadline to the Settlement Class Members. (*Id.* ¶ 4.3(a)(v)).

The notices include a description of the material terms of the Settlement; the date by which Settlement Class Members may submit a claim; the date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website. (*Id.* at Exs. B-C). Notice will also be posted on the Settlement Website. (*Id.* ¶ 4.3(b)). Settlement Members may submit their Claim Forms through the Settlement Website or by mail. (*Id.* ¶ 4.3).

### 2.  The Settlement Website.

The Settlement Administrator will establish a Settlement Website, which will

contain pertinent Settlement information and will provide links to relevant case documents. (*Id.* ¶ 4.3(b)). The Settlement Website will remain operational until at least one hundred eighty (180) days following the Effective Date. (*Id.*).

### 3. Opt-Outs and Objections.

All forms of notice explain: (i) the procedure by which a Settlement Class Member may exclude themselves from the Settlement prior to the Opt-Out Deadline; and (ii) the procedure for a Settlement Class Member to object to the Settlement or Plaintiffs' Counsel's applications for awards of attorneys' fees or Service Awards to Representative Plaintiffs prior to the Objection Deadline. (*Id.* at Exs. B-C). The proposed Opt-Out and Objection Deadlines are sixty (60) days after the Notice Deadline. (*Id.* ¶ 5.2).

## IV.   <u>ARGUMENT AND AUTHORITIES</u>

### A. The Court Should Preliminarily Approve the Settlement and Authorize Notice to the Proposed Settlement Class.

Court approval is required for any class action settlement that releases the claims of absent class members. Fed. R. Civ. P. 23(e). Approval is a two-step process. "In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement." *Harris v. Chevron U.S.A., Inc.*, No. 15-cv-0094, 2019 WL 5846917, at *2 (W.D. Okla. July 29, 2019). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *Newberg on Class Actions* §13:10 (5th ed. 2015).

Second, after preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected. *See id.* At the final fairness hearing, the Court also addresses any objections to the treatment of the litigation as a class action or objections to the terms of the settlement. *See Harris*, 2019 WL 5846917, at *2.

Before the Court can direct notice to the class, a plaintiff must "show[] that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B). Approval under Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors: (i) whether "the class representatives and class counsel have adequately represented the class"; (ii) whether the settlement "was negotiated at arm's length"; (iii) whether "the relief provided for the class is adequate"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D).[5] In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

---

[5] Rule 23(e)(C)(iv) and Rule 23(e)(C)(3) also requires the identification of any additional agreements related to the settlement. Plaintiffs' Counsel represents that there are no agreements related to the settlement other than those reflected in the Settlement Agreement itself and an agreement with Simpluris to perform notice and settlement administration services if this motion is granted by the Court. (*See* Federman Decl., ¶ 9).

identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

The Tenth Circuit has also identified four additional factors (partially overlapping with the Rule 23(e)(2) factors) to be considered in assessing whether a settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable" (the "*Jones* Factors"). *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

Preliminary approval of a proposed settlement is appropriate "where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* at *2 (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)). Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, this Court should grant preliminary approval and allow notice to be issued to the Class.

### 1.  Rule 23(e)(2)(A): The Proposed Class is Adequately Represented.

Plaintiffs' Counsel have extensive experience litigating complex and class actions and have demonstrated success in litigating data security breach class actions. (Federman Decl., ¶ 8, Exs. 2–3). Plaintiffs' Counsel have adequately represented the class by fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining,

and reviewing numerous documents from Sandridge regarding the Data Security Incident, affected class members, its remediation efforts, insurance coverage, and financial condition; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in mediation. (*Id*. ¶ 5). The extensive work done by Plaintiffs' Counsel provided them with ample information to negotiate this favorable Settlement for the Class. (*Id*. ¶¶ 5–6).

The Settlement Class Representatives have also demonstrated their adequacy by: (i) selecting well-qualified counsel; (ii) producing information and documents to their counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. (*Id*. ¶ 10). Their claims and interests align with those of the Settlement Class. (*Id.*). Thus, this factor weighs in favor of granting preliminary approval.

## 2. Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length.

"Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, Case No. 12-cv-292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (citing *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 689 (D. Colo. 2014)).

Here, the proposed settlement was negotiated at arm's length, without collusion, and with the assistance of a highly qualified and respected mediator, Bennett G. Picker. (*See* Federman Decl., ¶ 4). As part of the mediation process, the Parties exchanged and

provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. (*Id.* ¶ 5). The fact that the Settlement was achieved through well-informed and arm's-length neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B).

### 3. Rule 23(e)(2)(C) and the *Jones* Factors: The Settlement Relief is Fair, Reasonable, and Adequate.

#### i. *Jones* Factor 1:The Settlement was Fairly and Honestly Negotiated.

Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). This presumption reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

In this case, the Parties engaged in a full-day mediation session with well-regarded mediator Bennett G. Picker. (Federman Decl. ¶ 4). Although the mediation did not result in an immediate settlement, significant progress was made. (*Id.*). After thorough consideration, the Parties accepted a mediator's proposal, which settled the matter in principle. (*Id.*). The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Mr. Picker supports the conclusion that the Settlement was achieved free of collusion. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011).

### ii. Rule 23(e)(2)(C)(i) and *Jones* Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.

The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data breach litigation. Data breach litigation is evolving; there is no guarantee of a successful result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that should litigation continue Sandridge would likely assert several potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses Sandridge could assert—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face the risk of not receiving any relief at all.

> ### iii. *Jones* Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.

The Settlement guarantees Class Members real relief and value for their harms as well as protections from future fall-out from the Data Security Incident. The proposed settlement provides a $600,000.00 Settlement Fund from which the approximately 12,333 Settlement Class Members may submit a claim for substantial relief, as outlined above. This equates to approximately $48.65 per Settlement Class Member, which compares quite favorably to terms approved by courts in similar data breach cases. *See, e.g., Dickey's Barbeque Restaurants, Inc.,* No. 20-cv-3424, Dkt. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for only $2.3 million – approximately $0.76 per class member); *In re Herff Jones Data Breach Litigation*, No. 21-cv-1329 (S.D. Ind.) (data breach class action involving more than 1 million people that settled for $4.35 million – approximately $4.35 per class member); *Winstead v. ComplyRight, Inc.*, No. 1:18-cv-04990 (N.D. Ill.) (data breach class action involving 665,689 that settled for $3.025 million – approximately $4.54 per class member).

> ### iv. *Jones* Factor 4: The Parties and their Counsel Aver that the Settlement is Fair and Reasonable.

The judgment of the Parties and their counsel also supports the finding that the settlement is fair and reasonable. In negotiating the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, their own experience in other data breach litigation, and reported settlements in other data breach class actions. The benefits available here compare favorably to what Class Members could

recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued protracted litigation. In the experience of Plaintiffs' Counsel, who have litigated numerous data breach cases, spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement is an outstanding result for the Class. (Federman Decl., ¶¶ 8, 11).

Moreover, the proposed Settlement creates a non-reversionary common fund that does not provide any preferential treatment to the named Plaintiffs or any segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Settlement Class Members are eligible to recover damages for any injuries caused by the Data Security Incident. In satisfaction of Rule 23(e)(2)(D), the reimbursement for Ordinary Losses and Extraordinary Losses allows Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Plaintiffs also intend to apply for service awards for the Settlement Class Representatives. The Tenth Circuit has held that courts "regularly give incentive awards to compensate plaintiffs for the work they perform[]—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Service Awards are an "efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010). A service award to Plaintiffs is appropriate here given their efforts and participation and does not constitute preferential treatment.

**v.     Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective.**

As explained above, Class Members are eligible to make a claim for Ordinary Losses, Attested Time, Extraordinary Losses, Credit Monitoring, and/or an Alternative Cash Payment.  The task of validating those claims will be delegated to the Settlement Administrator, Simpluris, a neutral party which has significant experience processing these claims in similar cases.

The only difference in treatment among Class Members is that those who incurred and submit Ordinary Losses, Extraordinary Losses, and Attested Lost Time Claims will—appropriately and equitably—receive payments in proportion to the amount of their losses, which must be supported with documentation or attestation (for lost time). All Class Members who submit valid Alternative Cash Payment Claims will receive the same payment. For these reasons, the plan of distribution is both equitable and effective.

**vi.     Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable.**

Plaintiffs' Counsel will request no more than 33.33% of the Settlement Fund in attorneys' fees (subject to Court approval).  (SA, ¶ 9.1). This request is well within the typical range approved in the Tenth Circuit and elsewhere and poses no impediment to preliminary approval.  *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (finding that attorney's fees equal to one-fourth to one-third of a settlement are "well within the range of reasonable and permissible fees and costs awards in class action litigation."); *see also Davidson v. Healthgrades Operating Company, Inc.*, No. 1:21-CV-01250-RBJ (D. Colo.) (approving

attorney's fees of one-third of the settlement fund.).

For these reasons and based on Plaintiffs' Counsel's experience in similar class litigation, Plaintiffs' Counsel is of the opinion that the settlement is fair, adequate, and reasonable, and should be approved by the Court.

## V. THE COURT SHOULD FIND IT IS LIKELY TO CERTIFY THE SETTLEMENT CLASS.

Rule 23(e) states that before authorizing notice, a Court should determine that it "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See, e.g.*, *Harris*, 2019 WL 5846917 at *2. Here, the Court should find that it is likely to be able to certify this Settlement Class. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *11–14 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 999 F. 3d 1247, 2021 WL 2250845, at *16–19 (11th Cir. 2021); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 307–16 (N.D. Cal. 2018); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *2–3 (N.D. Ohio Aug. 12, 2019).

### A. Rule 23(a) Requirements Are Satisfied

***Numerosity:*** Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." In the Tenth Circuit, there is "no set formula" for determining whether numerosity is met, but district courts have "wide latitude in making this determination." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir.

2006) (citations and quotation marks omitted). Here, the proposed class consists of approximately 12,333 individuals. Joinder of so many individual plaintiffs is plainly impracticable, and the numerosity requirement is met here. *See, e.g.*, *In re Thornburg Mortg., Inc. Secs. Litig.*, 912 F. Supp. 2d 1178, 1233–34 (D. N.M. 2012) (finding class size in the "thousands" demonstrated joinder was impracticable).

*Commonality:* Rule 23(a)(2) requires "questions of law or fact common to the class." The proponents of certification must identify a common contention "'of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In this case, all members of the proposed class assert that their PII was compromised as a result of the Data Security Incident. Thus, their claims will involve numerous common questions of law and fact that will be resolved in the same way for all class members, such as whether Sandridge owed Plaintiffs and Class Members a duty to handle PII with reasonable care, and whether Sandridge's data security practices were inadequate to the point of breaching that duty. *See, e.g.*, *Naylor Farms*, 923 F.3d at 789 n. 10 (explaining that whether a defendant breached a duty allegedly owed to all class members is a common question). Therefore, the commonality requirement is met.

*Typicality:* Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The interests and claims of named plaintiffs and class members "need not be identical," provided they are "based on the same

legal or remedial theory." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010). The typicality requirement is satisfied where the interests of named plaintiffs and class members are not significantly antagonistic to one another, and where the harm or risk of harm faced by the named plaintiffs and class members stem from the same alleged conduct on the part of the defendant. *See id.* at 1199. Here, the claims of Plaintiffs and Class Members are the same and there are no significant differences among them. Plaintiffs and all Class Members allege their PII was exposed in the same Data Security Incident due to Sandridge's deficient data security practices. As such, typicality is satisfied.

*Adequacy of Representation*: Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In assessing the adequacy requirement, courts look to answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interests with other class members [;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks*, 314 F.3d 1187–88 (citations and quotation marks omitted). Plaintiffs do not have any interests antagonistic to other class members and have retained qualified and experienced Counsel. (Federman Decl., ¶ 10). Further, as stated above, Plaintiffs and their counsel have been vigorously representing Class Members, and their diligence resulted in an early settlement that will deliver meaningful relief to Class Members. Accordingly, the adequacy requirement is met.

### B. The Requirements of Rule 23(b)(3) are Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the predominance and superiority requirements are met.

*Predominance:* "[T]he predominance inquiry 'asks whether the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Naylor Farms*, 923 F.3d at 789 (quoting *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Newberg on Class Actions* § 4:49)). "Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d at 789 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). The requirement is met here for purposes of settlement because the overwhelming majority of the issues of law and fact are common to all class members. "The focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'" *Equifax*, 2020 WL 256132 at *13 (quoting *Anthem*, 327 F.R.D. at 312). The only potentially individualized issue here is damages, which does not defeat predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'").

**Superiority:** The superiority inquiry requires courts to consider class members' interest in individually controlling the litigation, the extent and nature of any litigation

already begun by class members, and the desirability or undesirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)–(C). All these factors weigh in favor of finding the superiority requirement is met in the case at bar. For most of the 12,333 Settlement Class Members, individual damages are likely to be too small to warrant individual litigation, particularly because data breach litigation involves complex technical issues and expert testimony that makes litigation costly. *See Anthem*, 327 F.R.D. at 315–16. Litigating the claims of thousands of individuals—which would require presentation of the same evidence and expert opinions many times over—would be manifestly inefficient here.   Because class treatment is superior to individual litigation, superiority is satisfied.

## VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN AND SETTLEMENT ADMINISTRATOR.

Rule 23(c)(2)(B) requires that for any proposed settlement under Rule 23(b)(3), notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Permissible means of notice include "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) Likewise, due process requires class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar."). The method and manner of notice process is "left to the

discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975).

The Parties propose notifying Class Members individually and directly via U.S. Mail. Within ten (10) days after the entry of the Preliminary Approval Order Sandridge will provide the Settlement Class List to the Settlement Administrator which will include physical addresses for the Settlement Class Members. (SA, ¶ 4.2). Any notices returned to the Settlement Administrator with a forwarding address will be remailed. (*Id.* ¶ 4.3). Additionally, a reminder notice may be provided if the Claims Rate is less than 3.0%. (*Id.* ¶ 4.3(a)(v)).

Furthermore, the notice materials are plain and easy to understand. The notices include, *inter alia*, a description of the litigation, the essential terms of the Settlement, the deadline to submit a claim, and information regarding the Settlement Class Member's rights to opt out or object. (*Id.* at Exs. B–C). Thus, the notice program satisfies the requirements of due process and Rule 23 and should be approved.

The Court should also approve Simpluris as the settlement administrator. Simpluris is a well-known firm with a history of successfully administering many class action settlements, including other data breach settlements. The parties selected Simpluris after considering bids from multiple administration firms and believe that Simpluris will be able to meet the obligations imposed on the settlement administrator under the settlement for a reasonable cost. (Federman Decl. ¶ 7).

## VII.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs request that the Court grant their Motion

and enter the proposed order submitted by the Parties.

Dated: October 17, 2023                    Respectfully submitted,


                                           <u>*/s/: William B. Federman*</u>
                                           William B. Federman
                                           **FEDERMAN & SHERWOOD**
                                           10205 N. Pennsylvania Ave.
                                           Oklahoma City, OK 73120
                                           Telephone: (405) 235-1560
                                           wbf@federmanlaw.com

                                           David K. Lietz (admitted *pro hac vice*)
                                           **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
                                           5335 Wisconsin Ave. NW, Suite 440
                                           Washington, D.C. 20015
                                           Tel: (866) 252-0878
                                           Fax: (202) 686-2877
                                           Email: dlietz@milberg.com

                                           ***Counsel for Plaintiffs and the Class***


## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 17, 2023, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


                                           <u>*/s/: William B. Federman*</u>
                                           William B. Federman