## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GUADALUPE GRANADO, MANUEL VEGA**, and **DONALD JOHNSTON**, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>**SANDRIDGE ENERGY, INC.,**<br><br>Defendant. | Case No. 5:22-CV-00516 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED <u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................................ 3

    A.   Overview of the Litigation. ................................................................... 3

    B.   Negotiations and Settlement of the Action. .......................................... 4

III. SUMMARY OF SETTLEMENT TERMS .......................................................... 5

    A.   CLASS DEFINITION ............................................................................ 5

    B.   SETTLEMENT BENEFITS ..................................................................... 6

      1.   Monetary Benefits to Settlement Class Members. ............................... 6

      2.   Non-Monetary Benefits to Settlement Class Members. ...................... 7

    C.   RELEASED CLAIMS ............................................................................ 7

    D.   CLAIMS, OPT OUTS, AND OBJECTIONS ............................................. 8

    E.   SERVICE AWARDS, ATTORNEYS' FEES, COSTS, AND EXPENSES ..... 8

IV.  ARGUMENT ................................................................................................... 8

    A.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND
        WARRANTS FINAL APPROVAL. .......................................................... 8

      1.   Rule 23(e)(2)(A): The Proposed Class is Adequately Represented. .................. 9

      2.   Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length.
        .................................................................................................... 10

      3.   Rule 23(e)(2)(C) and the *Jones* Factors: The Settlement Relief is Fair,
        Reasonable, and Adequate. ............................................................. 11

i.   Jones Factor 1: The Settlement was Fairly and Honestly Negotiated. ............ 11

ii.  Rule 23(e)(2)(C)(i) and Jones Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt. ................... 12

iii. Jones Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation. ........ 13

iv.  Jones Factor 4: The Parties and their Counsel Agree that the Settlement is Fair and Reasonable. ................................................................. 14

v.   Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective. .................................................... 15

vi.  Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable. ........... 16

V.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE 16

A.THE    RULE    23(a)    REQUIREMENTS    ARE    SATISFIED ................................................................................. 17

B.THE    REQUIREMENTS    OF    RULE    23(b)(3)    ARE    SATISFIED ................................................................................. 19

VI.  THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS ........................ 21

VII. CONCLUSION ................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amchem Prod., Inc. v. Windsor*,

    521 U.S. 591 (1997)...................................................................................17

*Brown v. Electrolux Home Products, Inc.*,

    817 F.3d 1225 (11th Cir. 2016) ...................................................................20

*CGC Holding Co., LLC v. Broad and Cassel*,

    773 F.3d 1076 (10th Cir. 2014) ...................................................................19

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

    888 F.3d 455 (10th Cir. 2017) .....................................................................15

*DG ex rel. Stricklin v. Devaughn*,

    594 F.3d 1188 (10th Cir. 2010) ..............................................................17, 18

*Dickey's Barbeque Restaurants, Inc.*,

    No. 20-cv-3424 (N.D. Tex.) .......................................................................14

*Gordon v. Chipotle Mexican Grill, Inc.*,

    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ...............12

*Hammond v. The Bank of N.Y. Mellon Corp.*,

    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ................................................12

*Harris v. Chevron U.S.A., Inc.*,

    No. CIV-15- 0094-PRW, 2019 WL 5846917 (W.D. Ok. July 29, 2019)...................17

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018)..................................................................20

*In re Crocs, Inc. Sec. Litig.*,

    306 F.R.D. 672 (D. Colo. 2014) ...................................................................... 11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,

    No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ...................... 20

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013) ........................................................................ 13

*In re Herff Jones Data Breach Litig.*,

    No. 21-cv-1329 (S.D. Ind.) ........................................................................... 14

*In re Molycorp, Inc. Sec. Litig.*,

    No. 12-cv-292, 2017 WL 4333997 (D. Colo. Feb. 15, 2017) ........................................ 11

*Jones v. Nuclear Pharmacy, Inc.*,

    741 F.2d 322 (10th Cir. 1984) ......................................................................... 9

*Lucas v. Kmart Corp.*,

    234 F.R.D. 688 (D. Colo. 2006) ...................................................................... 11

*Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*,

    No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ............... 15

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,

    923 F.3d 779 (10th Cir. 2019) ................................................................17, 18, 19, 20

*Pliego v. Los Arcos Mexican Rest., Inc.*,

    313 F.R.D. 117 (D. Colo. 2016) ...................................................................... 17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,

    314 F.3d 1180 (10th Cir. 2002) ...................................................................... 19

*Tyson Foods, Inc. v. Bouaphakeo*,

    136 S. Ct. 1036 (2016) ........................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ............................................................................... 17

*Winstead v. ComplyRight, Inc*.,

    No. 1:18-cv-04990 (N.D. Ill.) ............................................................... 14

**<u>Rules</u>**

Fed. R. Civ. P. 23 ...................................................................................... passim

**<u>Treatises</u>**

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ...................................... 12

*Manual For Complex Litigation*, § 21.632 (4th ed. 2014) ............................... 17

*Newberg on Class Actions*, § 4:49 ................................................................ 19

I.    **INTRODUCTION**

On April 9, 2024, the Court granted preliminarily approval of a class action settlement between Plaintiffs and Defendant Sandridge Energy, Inc. ("Sandridge" or "Defendant").[1] (ECF No. 38). The Settlement provides a generous non-reversionary Settlement Fund of $600,000.00 from which substantial and immediate benefits will be provided to the Settlement Class. This is an outstanding result for Plaintiffs and the Class that merits Final Approval.

The Settlement makes the following relief available to all Settlement Class Members: (i) reimbursement up to $1,5000.00 for Documented Ordinary Losses; (ii) reimbursement for Attested Time Spent at a rate of $30.00 per hour (a maximum of 10 hours); (iii) reimbursement for Documented Extraordinary Losses up to $10,000; and (iv) three (3) years of credit monitoring and identity theft protection services.[2] (SA, ¶¶ 2.3.1–2.3.2). Additionally, and in lieu of receiving a reimbursement for Documented Ordinary Losses, Attested Time Spent, or Documented Extraordinary Losses, all Settlement Class Members may elect to submit a claim for a one-time Alternative Cash Payment which will be a pro rata payment from the net Settlement Fund after payment of costs of the settlement,

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 34-1). Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

[2] A claim for Attested Time Spent may be combined with a claim for reimbursement for Documented Ordinary Losses, but a Settlement Class Member will not be eligible to receive more than $1,500.00 for Documented Ordinary Losses and Attested Time Spent. (SA, ¶ 2.3.2(b)).

including the costs of carrying out the Notice Program, any Attorney's Fees and Expenses, any Service Awards, and payments for claimed Credit Monitoring, Documented Ordinary Losses, Attested Time Spent, and Documented Extraordinary Losses. (*Id.* ¶ 2.3.2(d)).

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—after extensive investigation, hard-fought litigation, and arm's-length negotiations. Although Plaintiffs and Class Counsel believe in the merits of their claims, Defendant denies each and every claim and contention alleged against it in the Litigation, including all allegations of wrongdoing or liability. The claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiffs would face considerable risks at each stage of litigation. Against these risks, Class Counsel and Plaintiffs believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided directly to the Settlement Class Members and successfully reached 95.6% of the Class. (Declaration of Christopher Leung of Simpluris, Inc. Regarding Notice and Settlement Administration ("Notice Decl."), ¶ 6 (attached hereto as **Exhibit 1**). The Settlement has been very well-received by the Settlement Class. No Class Member sought to be excluded from the Settlement, and no Class Members objected to the Settlement. (*Id.* ¶¶ 10–11). The deadline to object or opt-out of the Settlement was July 8, 2024. (*Id.*). The deadline to submit a claim is August 7, 2024.

Plaintiffs now move the Court for final approval of the proposed Settlement. The Settlement meets all the criteria for final approval and Plaintiffs' Motion should be

GRANTED.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview of the Litigation.

Defendant is an oil and gas company involved in the acquisition of oil and gas properties. (First Am. Compl. ("Compl.") ¶ 17, ECF No. 13). Plaintiffs are former employees of Defendant, who supplied their personally identifiable information ("PII") to Defendant in exchange for employment. (*Id.* ¶¶ 11, 19–21).

On October 25, 2021, Sandridge experienced a "network disruption" in which "limited information maintained on [Defendant's] network was accessed by an unauthorized actor." (*Id.* at Exhibit 1). The types of information contained within the affected data included first and last names in combination with Social Security numbers. (*Id.* ¶ 1). Defendant sent notice letters via mail to Plaintiffs and the Settlement Class on or about March 31, 2022, informing them their PII may be at risk as a result of the Data Security Incident. (*Id.* ¶¶ 29–30).

On May 27, 2022, Plaintiffs filed their Class Action Petition in the District Court of Oklahoma County, State of Oklahoma, alleging Defendant failed to properly secure and safeguard Plaintiffs' and Class Members' PII. Defendant timely removed the action to this Court, on the basis of diversity jurisdiction. (ECF No. 1). Shortly thereafter, Defendant filed a motion to dismiss based on standing and other grounds (ECF No. 6). In response, Plaintiffs filed their First Amended Class Action Complaint (ECF No. 13). Defendant filed another Motion to Dismiss (ECF No. 23), which was later withdrawn by Defendant to pursue approval of this Settlement (ECF No. 28).

**B. Negotiations and Settlement of the Action.**

This Settlement resulted from good faith, arm's-length settlement negotiations, as well as a full-day mediation session on September 20, 2023, with highly respected mediator, Bennet G. Picker. (Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Class Counsel Decl."), ¶ 4 (attached hereto as **Exhibit 2**)). Although the Parties did not resolve the case during the mediation session, significant progress was made. (*Id.*). After the conclusion of the mediation session, the Mediator provided a confidential mediator's proposal to the Parties, which was considered by Plaintiffs and Defendant before eventually accepting the proposal. (*Id.*). The Mediator's proposal resulted in an agreement to settle this matter in principle on a class-wide basis. (*Id.*).

In the weeks that followed the mediation, the Parties continued to negotiate the remaining terms of the Settlement and drafted a comprehensive Settlement Agreement with accompanying exhibits. (*Id.* ¶ 5). The Parties also solicited cost proposals from potential settlement administrators to provide adequate cost-effective notice to Plaintiffs and the Class. (*Id.*).

Importantly, settlement negotiations did not occur before Plaintiffs were well informed of the strengths and weaknesses of their case. (*Id.* ¶ 6). Before settlement negotiations, Plaintiffs sought and obtained informal discovery from Sandridge on a number of topics, including: the number of individuals whose PII was compromised during the Breach; the types of PII exposed; the mechanics of the Data Security Incident; the

remedial actions Sandridge took after the Data Security Incident; and the terms of any potentially applicable insurance coverage. (*Id.* ¶ 5).

The information received allowed Class Counsel,[3] who are experienced in data breach class actions, to conduct settlement negotiations with a thorough understanding of the strengths and weaknesses of Plaintiffs' claims, the size and scope of the potential class, the ability to give notice to the proposed class, and the financial resources available to facilitate a settlement. (*Id.* ¶ 7). Equipped with this knowledge, and their significant experience litigating and resolving similar actions, Class Counsel negotiated what they believe to be a fair, adequate, and reasonable settlement worthy of presentation to the Court and final approval. (*Id.*).

The Court granted preliminary approval of this Settlement on April 9, 2024. ECF No. 38. Notice was subsequently issued to the Settlement Class.

### III.    SUMMARY OF SETTLEMENT TERMS

### A. CLASS DEFINITION

The Court preliminarily certified, for Settlement purposes only, the following class of individuals:

> all persons Sandridge identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.[4]

---

[3] "Class Counsel" collectively refers to William B. Federman of Federman & Sherwood and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC.

[4] "Excluded from the Settlement Class are any judge presiding over this matter and any members of their first-degree relatives, judicial staff, Sandridge's officers, directors, and members, and persons who timely and validly request exclusion from the Settlement Class." (SA, ¶ 1.31).

(SA, ¶ 1.31).

## B. SETTLEMENT BENEFITS

Defendant contributed $600,000.00 to a non-reversionary Settlement Fund for the benefit of Plaintiffs and the Class. (*Id.* ¶ 1.35). The Settlement Fund will be used to pay: (i) Settlement Costs;[5] (ii) Documented Ordinary Losses and Extraordinary Losses; (iii) Attested Time; (iv) Credit Monitoring; and (v) payments for approved claims for the Pro Rata Alternative Cash Payments. (*See id.* ¶¶ 1.35, 2.7). Settlement Payments may be subject to a pro rata increase or decrease, depending on the aggregate number of valid claims received. (*See id.* ¶¶ 2.9–2.10).

### 1. Monetary Benefits to Settlement Class Members.

All Settlement Class Members may submit a claim for up to $1,500.00 for reimbursement of Documented Ordinary Losses. (*Id.* ¶ 2.3.2(a)). To receive reimbursement for Documented Ordinary Losses, Settlement Class Members need only submit a valid Claim Form that includes third-party documentation supporting the loss (such as receipts). (*Id.*).

Settlement Class Members may also submit a claim for Attested Time Spent for up to ten (10) hours at a rate of $30.00 per hour (a maximum of $300.00). (*Id.* ¶ 2.3.2(b)). Settlement Class Members may receive reimbursement of Attested Time Spent with an

---

[5] "Settlement Costs" means all costs of the settlement including the costs of carrying out the Notice Program, as set forth in Paragraph 4 herein, Claims Administration, any Attorneys' Fees and Expenses Award, any Service Award to Representative Plaintiffs, and all other expenses or costs related to the settlement, and payments of valid claims to the Settlement Class Members." (SA, ¶ 1.31).

attestation that they spent the claimed time responding to issues raised by the Data Incident. (*Id.*).   A claim for Attested Time Spent may be combined with a claim for reimbursement for Documented Ordinary Losses, but a Settlement Class Member will not be eligible to receive more than $1,500.00 for Documented Ordinary Losses and Attested Time Spent. (*Id.*).

Additionally, Settlement Class Members are also eligible to receive compensation for Documented Extraordinary Losses resulting from the Data Security Incident of up to $10,000.00, upon submission of a valid Claim Form. (*Id.* ¶ 2.3.2(c)).

Lastly, in lieu of receiving a reimbursement for Documented Ordinary Losses, Attested Time Spent, or Documented Extraordinary Losses, all Settlement Class Members may elect to submit a claim for an Alternative Cash Payment which will be a pro rata payment from the net Settlement Fund after payment of costs of the settlement, including the costs of carrying out the Notice Program, any Attorney's Fees and Expenses, any Service Awards, and payments for claimed Credit Monitoring, Documented Ordinary Losses, Attested Time Spent, and Documented Extraordinary Losses. (*Id.* ¶ 2.3.2(d)).

## 2.  Non-Monetary Benefits to Settlement Class Members.

In addition to the monetary benefits described above, Settlement Class Members are also eligible to enroll in three (3) years of Credit Monitoring and Identity Theft Protection Services, regardless of whether the Settlement Class Member submits a claim for monetary compensation. (*Id.* ¶ 2.3.1).

## C. RELEASED CLAIMS

In exchange for the relief described above, Defendant and all Released Parties will

receive a full release of all known and unknown claims arising out of or related to the Data Security Incident. (*Id.* ¶ 8.1).

### D. CLAIMS, OPT OUTS, AND OBJECTIONS

Class members had until July 8, 2024, to object or opt out of the Settlement. (Notice Decl., ¶¶ 10–11).  No Class Members objected to the Settlement and no Class Members requested exclusion from the Settlement. (*Id.*).

### E. SERVICE AWARDS, ATTORNEYS' FEES, COSTS, AND EXPENSES

As compensation for the substantial benefit conferred upon the Settlement Class, Settlement Class Counsel filed a Motion for Award of Attorney's Fees, Reimbursement of Litigation Expenses, and Service Awards (*see* ECF Nos. 39, 40), requesting $200,000.00 in attorney's fees, $12,142.88 in expenses, as well as Service Awards of $2,500.00 for each of the Class Representatives ($7,500.00 in total). (SA, ¶ 9.2).

## IV.    ARGUMENT

### A. The Settlement is Fair, Reasonable and Adequate, and Warrants Final Approval.

Under Federal Rule of Civil Procedure ("Rule") 23(e)(2), in order to grant final approval of a class action settlement, the Court must first determine whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, Courts must also

consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

Additionally, the Tenth Circuit has identified four extra factors (partially overlapping with the Rule 23(e)(2) factors) to consider when assessing whether a settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable" (the "*Jones* Factors"). *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

This Court made a preliminary finding on April 9, 2024 (ECF No. 38), that the Settlement met the requirements above. Now, the Court should find that these pre-requisites have been finally satisfied for the reasons set forth below.

### 1.  Rule 23(e)(2)(A): The Proposed Class is Adequately Represented.

This Court previously considered Class Counsels' qualifications when appointing William B. Federman and David K. Lietz as Class Counsel when preliminarily approving the Settlement. (*See* ECF No. 38). Specifically, the Court found that "Class Counsel is well-qualified and experienced." (*Id.*). The same still holds true at the final approval stage.

Class Counsel has extensive experience litigating complex class actions and has demonstrated ample success in litigating data security breach class actions. (*See* ECF Nos. 34-2, 34-3, 34-4). Class Counsel have adequately represented the class by fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining, and reviewing numerous documents from Sandridge regarding the Data Security Incident, affected class members, its remediation efforts, insurance coverage, and financial condition; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in mediation and a lengthy negotiation process. (Class Counsel Decl., ¶ 14). The extensive work done by Class Counsel to date provided Class Counsel with sufficient information to negotiate this very favorable Settlement for the Class. (*Id*. ¶¶13–14).

The Settlement Class Representatives have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. (*Id*. ¶ 15). Their claims and interests align with those of the Settlement Class, and they approve of the Settlement. (*Id.*). Thus, this factor militates in favor of granting final approval.

### 2. Rule 23(e)(2)(B): The Proposed Settlement was Negotiated at Arm's Length.

"Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-292, 2017 WL

4333997, at *4 (D. Colo. Feb. 15, 2017) (citing *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 689 (D. Colo. 2014)).

The Settlement was negotiated at arm's length, without collusion, and with the assistance of a highly qualified and respected mediator, Bennett G. Picker. (Class Counsel Decl., ¶ 4). As part of the mediation process, the Parties exchanged and provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. (*Id.* ¶¶ 6–7, 14). The fact that the Settlement was achieved through well-informed, and arm's-length neutrally supervised negotiations weighs in favor of granting final approval under Rule 23(e)(2)(B).

### 3. Rule 23(e)(2)(C) and the *Jones* Factors: The Settlement Relief is Fair, Reasonable, and Adequate.

#### i. *Jones Factor 1: The Settlement was Fairly and Honestly Negotiated.*

Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). This presumption reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

In this case, the Parties engaged in a full-day mediation session with well-regarded mediator, Bennett G. Picker. (Class Counsel Decl., ¶ 4). Although the mediation did not result in a settlement, significant progress was made. (*Id.*). The Parties eventually accepted a mediator's proposal after further discussions with the Mediator and careful consideration of the proposal. (*Id.*). The arm's-length nature of the settlement negotiations and the

involvement of an experienced mediator like Mr. Picker supports the conclusion that the Settlement was achieved free of collusion. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011). Thus, this factor weighs in favor of final approval.

> ii. *Rule 23(e)(2)(C)(i) and Jones Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.*

The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain—especially where serious questions of law and fact exist, which is common in data breach litigation. Data breach litigation is evolving; there is no guarantee of a successful result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that should litigation continue Sandridge would likely assert several potentially case-dispositive defenses. (Class Counsel Decl., ¶ 9). Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293

F.R.D. 21 (D. Me. 2013). Getting a class certified – and then maintaining certification – is not assured. *In re Marriott International Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022), was recently decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023).[6] The *Marriott* case has now been pending since 2019, providing a stark example about how long these data breach cases drag on. And no data breach class action—in any jurisdiction —has gone to trial and achieved a plaintiffs' verdict. Plaintiffs dispute the defenses Sandridge could assert—but it is obvious that their success at trial is far from certain. (Class Counsel Decl., ¶ 9). Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk—such as not receiving any relief at all. Therefore, this factor also supports final approval of the Settlement.

> ### iii. *Jones Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.*

The Settlement guarantees Class Members real relief and value for their harms as well as protections from future fall-out from the Data Security Incident. The proposed settlement provides a $600,000.00 Settlement Fund from which the approximately 12,215 Settlement Class Members can submit a claim for substantial relief, as outlined above. This equates to a per person recovery of approximately $49.12 per person which compares quite favorably against similar data breach cases. *See, e.g., Dickey's Barbeque Restaurants, Inc.,*

---

[6] To complete the story, the classes were re-certified by the district court on remand. *See In reMarriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023).

No. 20-cv-3424, ECF No. 62 (N.D. Tex.) (data breach class action with per person recovery of approximately $0.76 per class member); *In re Herff Jones Data Breach Litigation*, No. 21-cv-1329 (S.D. Ind.) (data breach class action with per person recovery of approximately $4.35 per class member); *Winstead v. ComplyRight, Inc*., No. 1:18-cv-04990 (N.D. Ill.) (data breach class action with per person recovery of approximately $4.54 per class member). Accordingly, the third *Jones* Factor is satisfied.

### iv.    *Jones Factor 4: The Parties and their Counsel Agree that the Settlement is Fair and Reasonable.*

The judgment of the Parties and their counsel also supports the finding that the settlement is fair and reasonable. In negotiating the Settlement, Class Counsel relied upon published reports documenting data breach and identity theft costs, their own experience in other data breach litigation, and reported settlements in other data breach class actions. (Class Counsel Decl., ¶ 8). The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel, who has litigated numerous data breach cases, spoken to victims of other data breaches, and has reviewed claims data from other settlements, the relief provided by this Settlement is an outstanding result for the Class. (*Id.* ¶ 10).

Moreover, the proposed Settlement creates a non-reversionary common fund that does not provide any preferential treatment to the named Plaintiffs or any segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Settlement Class Members are eligible to recover damages for any injuries caused by the Data Security Incident. In satisfaction of Rule

23(e)(2)(D), the reimbursement for out-of-pocket expenses allows Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Class Counsel also applied for service awards for the Settlement Class Representatives. The Tenth Circuit has held that courts "regularly give incentive awards to compensate plaintiffs for the work they perform[]—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Service Awards are an "efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Luken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010). A service award to Plaintiffs is appropriate here given their efforts and participation and does not constitute preferential treatment.

### v. *Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will Be Equitable and Effective.*

As explained above, Class Members are eligible to make a claim for Documented Ordinary Losses, Attested Time Spent, Documented Extraordinary Losses, Credit Monitoring, and/or an Alternative Cash Payment. (SA, ¶¶ 2.3.1–2.3.2). The task of validating those claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. (Notice Decl., ¶ 2). Thus, the only difference in treatment among Class Members is that those who incurred and submit claims for Documented Ordinary Losses, Attested Time Spent, and

Documented Extraordinary Losses will—appropriately and equitably—receive payments in proportion to the amount of their losses. All Class Members who submit valid Alternative Cash Payment Claims will receive the same payment. The claims period was sufficiently long enough to enable all eligible Class Members to collect any necessary information before submitting their claims. For these reasons, the plan of distribution is both equitable and effective.

### vi. *Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees Are Reasonable.*

As compensation for the substantial benefit conferred upon the Settlement Class, Settlement Class Counsel filed a Motion for Award of Attorney's Fees, Reimbursement of Litigation Expenses, and Service Awards to Plaintiffs (ECF Nos. 39, 40), requesting $200,000.00 in attorney's fees and $12,142.88 in reasonable expenses. (*Id.*). These requests are contemplated by the Settlement Agreement and Class Counsel apprised the Court of these requests in their Motion for Preliminary Approval. (SA, ¶ 9.2; ECF No. 33). This was also clearly delineated in the notice materials sent to the Settlement Class. (ECF No. 34-1).

For these reasons and based on Class Counsels' experience in similar class litigation, Class Counsel is of the opinion that the settlement is fair, adequate, and reasonable, and should be finally approved by the Court.

## V. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

When a settlement is reached before certification, a court must also determine whether to certify the settlement class. *See, e.g., Manual For Complex Litigation*, § 21.632

(4th ed. 2014); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsecon of Rule 23(b) are satisfied. *See, e.g., Harris v. Chevron U.S.A.*, Inc., No. CIV-15- 0094-PRW, 2019 WL 5846917, at *2 (W.D. Ok. July 29, 2019). The Court previously provisionally certified the Settlement Class based on these criteria, and nothing has changed. Final settlement class certification is warranted for the same reasons.

### A. The Rule 23(a) Requirements Are Satisfied

**Numerosity:** Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Tenth Circuit have determined that numerosity has been satisfied where classes consisted of 50 or 100 members. *See Pliego v. Los Arcos Mexican Rest., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (collecting cases). Here, the proposed class consists of over 12,000 individuals. As such, the numerosity requirement is plainly met.

**Commonality:** Rule 23(a)(2) requires "questions of law or fact common to the class." The proponents of certification must identify a common contention "'of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In other words, a finding of commonality requires only a single common question of law or fact. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

In this case, all members of the proposed class assert that their PII was compromised as a result of the Data Security Incident. Thus, their claims will involve numerous common questions of law and fact that will be resolved in the same way for all Class Members, such as whether Sandridge owed Plaintiffs and Class Members a duty to handle their PII with reasonable care, and whether Sandridge's data security practices were inadequate to the point of breaching that duty. *See, e.g., Naylor Farms*, 923 F.3d at 789 n. 10 (explaining that whether a defendant breached a duty allegedly owed to all class members is a common question). Therefore, the commonality requirement is met.

**Typicality:** Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The interests and claims of named plaintiffs and class members "need not be identical," provided they are "based on the same legal or remedial theory." *DG ex rel. Stricklin*, 594 F.3d at 1198–99. The typicality requirement is satisfied where the interests of named plaintiffs and class members are not significantly antagonistic to one another, and where the harm or risk of harm faced by the named plaintiffs and class members stem from the same alleged conduct on the part of the defendant. *See id*. at 1199. Here, the claims of Plaintiffs and Class Members are the same and there are no significant differences among them. Plaintiffs and all Class Members allege their PII was exposed in the same Data Security Incident due to Sandridge's deficient data security practices. As such, typicality is satisfied.

**Adequacy of Representation:** Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two (2) questions relevant to the adequacy of

representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). Plaintiffs' interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class as they all seek to recover for the harm they incurred as a result of the Incident. (Class Counsel Decl., ¶ 15). Further, as stated above, Plaintiffs and their counsel have been vigorously representing Class Members, and their diligence resulted in an early settlement that will deliver meaningful relief to Class Members. Accordingly, the adequacy requirement is met.

## B.  The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the predominance and superiority requirements are both met, warranting final approval of the Settlement.

**Predominance:** "[T]he predominance inquiry 'asks whether the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Naylor Farms*, 923 F.3d at 789 (*quoting CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Newberg on Class Actions*, § 4:49)). "Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d

19

at 789 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). The requirement is met here for purposes of settlement because the overwhelming majority of the issues of law and fact are common to all class members. "The focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'" *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *13 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021) (quoting *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018)). The only potentially individualized issue here is damages, which does not defeat predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'").

**Superiority:** The superiority inquiry requires courts to consider class members' interest in individually controlling the litigation, the extent and nature of any litigation already begun by class members, and the desirability or undesirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)–(C). All these factors weigh in favor of finding the superiority requirement is met in the case at bar. For most of the Class Members, individual damages are likely to be too small to warrant individual litigation, particularly because data breach litigation involves complex technical issues and expert testimony that makes litigation costly. *See Anthem*, 327 F.R.D. at 315–16. Litigating the claims of hundreds of thousands of class members—which would require presentation of the same evidence and expert opinions many times over—would be manifestly

inefficient here. Because class treatment is superior to individual litigation, superiority is satisfied.

## VI.    THE NOTICE ADEQUATELY APPRISED CLASS MEMBERS

As the Court preliminarily found, the Notice to the Settlement Class satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan has now been carried out by the Settlement Administrator, Simpluris, and its execution satisfied all the requirements of Rule 23(c).

To satisfy due process, notice to class members must be the best practicable method and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided when class members can be located and identified through reasonable effort, notice may be provided by U.S. mail, electronic mail, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

Simpluris carried out the Notice Program pursuant to the Court's Preliminary Approval Order, ultimately reaching 96.5% of the Settlement Class via the direct U.S. Mail notice alone. (Notice Decl., ¶ 6). The direct notice was carried out as follows: on April 12,

2024, the Defendant provided Simpluris with a data file of Class Member data that included names and contact information. (*Id.* ¶ 4). The data files contained a total of 12,337 rows of records. (*Id.*). Upon receipt of the Class Member data file, Simpluris "scrubbed" the data to ensure it was in proper format for distributing notice and applied data logic as confirmed with counsel to deduplicate records where appropriate. (*Id.* ¶ 5). The final Class List contained 12,215 unique records of Class Members, including 12,210 Class Members with valid physical mailing addresses and 5 Class Members with invalid physical mailing addresses. (*Id.*).

On May 9, 2024, Simpluris mailed the Postcard Notice with tear-away Claim Form to 12,215 Class Members.[7] (*Id.* ¶ 6). As of July 25, 2024, a total of 2,569 Postcard Notices have been returned by USPS. (*Id.*). For the Postcard Notices returned without a forwarding address, Simpluris performed an advanced address search (*i.e.*, skip trace) on all of these addresses. (*Id.*). Simpluris used the Settlement Class Member's name and previous address to locate a more current address. (*Id.*). Of the 2,569 returned Postcard Notices, 2,137 Postcard Notices were re-mailed to either a newfound address or a forwarding address provided by USPS, and 432 Postcard Notices were determined to be undeliverable because no updated address was found in a skip trace. (*Id.*).

In addition to providing direct notice to the Settlement Class, Simpluris also established a Settlement website on which Settlement Class Members could submit claims

---

[7] On April 18, 2024, Simpluris mailed and emailed notifications to relevant state Attorneys Generals pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715. (Notice Decl., ¶ 3).

and download important case documents. (*Id.* ¶ 7). Simpluris also established a toll-free telephone line, allowing Class Members to listen to frequently asked questions. (*Id.* ¶ 8).

The reaction to the Settlement has been overwhelmingly positive. As of July 25, 2024, Simpluris has received 134 timely Online Claim Form submissions and 569 timely Postcard Claim Forms via mail. (*Id.* ¶ 9). This represents an exceptional claims rate of 5.76% based upon the total notice population of 12,215, or a claims rate of 5.96% based on the presumed successfully delivered notice counts of 11,783 Settlement Class Members.[8] The deadline to opt out or object to the Settlement was July 8, 2024. (*Id.* ¶¶ 10–11). No Class Members requested exclusion or objected to the Settlement. (*Id.*).

Plaintiffs submit that the Notice Program issued pursuant to the Settlement meets the requirements of due process and the Federal Rules of Civil Procedure, supporting final approval.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order submitted herewith.

---

[8] The typical claims rate for data breach cases is between 1–3%. *See Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (claims rate of 1.56%); *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024) (claims rate of approximately 2.56%); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate ... is on par with other consumer cases, and does not otherwise weigh against approval); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding 1.8% claims rate reflects positive reaction by class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), aff'd, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate).

Dated: August 2, 2024

Respectfully submitted,

*/s/: William B. Federman*

William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com

David K. Lietz (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Ave. NW, Suite 440
Washington, D.C. 20015
Tel: (866) 252-0878
Fax: (202) 686-2877
Email: dlietz@milberg.com

***Counsel for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ William B. Federman*

William B. Federman

24